# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **E.K.**

**No. 20-0150** (Mercer County 18-JA-60-WS)

**FILED**

**September 23, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother S.G., by counsel Gerald R. Linkous, appeals the Circuit Court of Mercer County's January 16, 2020, order terminating her parental, custodial, and guardianship rights to E.K.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Brandolyn N. Felton-Ernest, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Thomas Janutolo, filed a response on behalf of the child in support of petitioner's appeal. Respondent Father J.K., by counsel Earl H. Hager, filed a response in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying her motion for a post-dispositional improvement period and in terminating her parental, custodial, and guardianship rights rather than imposing a less-restrictive dispositional alternative.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Following the filing of a child abuse and neglect petition in February of 2018, petitioner stipulated to allegations that she neglected her child due to her mental health issues and by engaging in domestic violence with her live-in boyfriend, D.P.[2] Petitioner moved for a post-adjudicatory improvement period, which the circuit court granted in September of 2018. As part of her improvement period, petitioner agreed to follow through with mental health treatment,

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]D.P. was a pre-petition custodian of E.K. and included as a respondent to the child abuse and neglect petition.

1

attend substance abuse meetings, complete a psychological evaluation, and participate in parenting classes. In July of 2018, D.P. requested visitation with the child, which the circuit court granted at the discretion of the guardian. Following a contested adjudicatory hearing, D.P. was also adjudicated as an abusing parent based on domestic violence and his failure to appreciate the effect his actions had on the child. In March of 2019, the circuit court heard evidence that the child did not want to visit with D.P. and ordered that he have no further contact with the child. The circuit court also extended petitioner's post-adjudicatory improvement period, and she continued to visit with the child.

In August of 2019, the DHHR moved to suspend supervised visitations due to petitioner's inappropriate comments to the child. The DHHR called the child's therapist who testified that petitioner told the child to "tell people that I miss [D.P.] so that I can come home." Additionally, after petitioner did not appear for a scheduled visit, the child disclosed witnessing specific instances of domestic violence prior to her removal from petitioner's care where D.P. slapped petitioner in anger. The therapist described the child as "angry with [D.P.]" The therapist further testified she received reports that the child was behaving poorly in school and opined that visitation with petitioner was not in the child's best interest at that time. Ultimately, the circuit court granted the DHHR's motion to suspend visitations.

In November of 2019, the circuit court heard evidence regarding disposition. The DHHR called petitioner's case worker as a witness, who testified that petitioner failed to improve her mental health and failed to follow recommended treatments. The DHHR presented evidence that, in April of 2019, a service provider discovered that petitioner was not taking her medication as prescribed. Petitioner subsequently cancelled several parenting classes, which prevented the provider from tracking her medication regimen. The DHHR also presented testimony that, in July of 2019, D.P. became angry with the parenting provider, "cursed at [the provider]" and became aggressive. The provider informed petitioner and D.P. that she would work independently with petitioner thereafter, but petitioner informed the service provider that she "would not meet with her without [D.P.]" As a result, petitioner's parenting classes were suspended. Petitioner admitted that she stopped taking her medication for her bipolar disorder during the proceedings. She explained that "where everything was bubbled up and I don't know how to express[] it, . . . I thought the best way to do it [was] not taking my medication." Petitioner further expressed that when she experienced the "lows" of her bipolar disorder, she would not take her medication as prescribed.

According to petitioner's case worker, after D.P.'s no contact order went into effect, he tried to find the child at school. The worker testified that D.P. would follow the visitation supervisors after visitations in an attempt to learn where the child's foster home was. A visitation supervisor also testified that D.P. exhibited controlling behaviors. For instance, the supervisor called petitioner to speak with her, but D.P. answered the phone and insisted that he could relay information to petitioner, if necessary. The supervisor also testified that D.P. would wait in the parking lot of the visitation location for the child to leave with the supervisor. After the supervisor left the building with E.K., D.P. would approach and try to talk to the child or argue with the supervisor. D.P. continued this behavior despite direction from the supervisor to stop. Further testimony showed that D.P. refused to acknowledge that he had engaged in domestic violence in the presence of the child and blamed petitioner's failure to take her prescribed medication for the

2

prior incidents. D.P. further refused to participate in the recommended domestic violence course, but did complete a less-intensive course on the subject. Despite these concerning behaviors, petitioner married D.P. during the proceedings and remained in a relationship with him at the dispositional hearing.

The circuit court also heard evidence that the DHHR ceased to provide petitioner with services following the suspension of her supervised visitations in August of 2019. According to testimony, petitioner's drug screen referral lapsed in July of 2019, and she was notified that she could not continue to participate in drug screens at the facility. The drug screen provider requested a new referral from the DHHR, but the service was not restarted until October of 2019. Despite the circuit court's order that petitioner's services continue following the August of 2019 hearing when her supervised visitations were suspended, the case worker admitted that services did not continue.

At a decision conference in January of 2020, the circuit court terminated petitioner's parental, custodial, and guardianship rights. In doing so, the circuit court considered petitioner's ongoing mental health issues and her inability to see the effect her actions had on the child. The circuit court found that the child was afraid of D.P., but petitioner allowed him to "manipulate [her] to insert himself in the child's life." It found that petitioner was "under complete control of [D.P.] She defers to him[,] including visitation issues," and the record was "replete with [D.P.'s] controlling behavior which violated [c]ourt [o]rders as well as aggressive and stalking behaviors." The court noted further concern that D.P. was adjudicated as an abusing parent due to exposing the child to domestic violence, but he "denied wrongdoing despite his continu[ed] troubling behavior." Based on petitioner's continuing relationship with D.P. and her inability to remedy her mental health issues, the court concluded that there was no reasonable likelihood that petitioner would substantially correct the conditions of neglect or abuse in the near future. The circuit court memorialized its decision by its January 16, 2020, order. Petitioner now appeals that order.[3]

The Court has previously held:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

---

[3]The father voluntarily relinquished his custodial and guardianship rights during the proceedings below. D.P.'s custodial rights were also terminated. According to the parties, the permanency plan for the child is guardianship in her current placement.

Syl. Pt. 1, *In re Cecil T*., 228 W. Va. 89, 717 S.E.2d 873 (2011). Upon review, this Court finds no error in the proceedings below.

On appeal, petitioner argues that the circuit court erred in denying her motion for a post-dispositional improvement period. According to petitioner, the DHHR's failure to provide court-ordered services, specifically random drug screening, between the August of 2019 hearing and the final dispositional hearing in November of 2019 constitutes a denial of a "meaningful improvement period" and was grounds for the circuit court to grant her a second improvement period. Upon our review, we find petitioner is entitled to no relief.

In order to be granted a post-dispositional improvement period, West Virginia Code § 49-4-610(3)(B) requires that petitioner "demonstrate[], by clear and convincing evidence, that [she was] likely to fully participate in the improvement period." Because petitioner was previously granted an improvement period, she was also required to "demonstrate[] that since the initial improvement period, [she] has experienced a substantial change in circumstances [and] . . . due to that change in circumstances, [she] is likely to fully participate in the improvement period." W. Va. Code § 49-4-610(3)(D). Further, "West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period." *In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015). Here, petitioner does not argue that she met her burden of proof that she was likely to fully participate in an improvement period or that she had experienced a substantial change in circumstances from her prior improvement period. Rather, she depends solely on the DHHR's failure to provide services during a four-month period to support the granting of a second improvement period. However, petitioner fails to consider that she was granted a post-adjudicatory improvement period in September of 2018, granted a three-month extension to that improvement period in March of 2019, and provided services up until August of 2019. Indeed, petitioner was provided services for eleven months, which is beyond the statutorily anticipated time limit for a post-adjudicatory improvement period. Further, the services provided to petitioner had little to no positive effect. The service providers testified that petitioner did not fully participate in parenting classes, did not consistently take her prescribed medications for her bipolar disorder, and, ultimately, had her supervised visitations suspended for instructing the child to tell others that the child liked D.P. Moreover, petitioner's testimony illustrated her noncompliance with taking her prescribed medication and indicated that, in the future, she would not take her medication when experiencing the "lows" of her bipolar disorder. While the DHHR's failure to provide services is regrettable, in the context of petitioner's failure to benefit from the prior eleven months of services, we find no reversible error.[4]

---

[4]Petitioner also argues that the DHHR failed to file a family case plan during the proceedings below, which constitutes reversible error. "The purpose of the family case plan as set out in [W. Va. Code § 49-4-610] is to clearly set forth an organized, realistic method of identifying family problems and the logical steps to be used in resolving or lessening these problems." Syl. Pt. 2, *In re Desarae M.*, 214 W. Va. 657, 591 S.E.2d 215 (2003) (quoting syl. pt. 5, *State ex rel. Dep't of Human Services v. Cheryl M.,* 177 W. Va. 688, 356 S.E.2d 181 (1987)). Here, petitioner testified that she remembered attending a multidisciplinary treatment meeting where the terms of

(continued . . . )

4

Petitioner also argues that the circuit court erred in terminating her parental rights rather than imposing a less-restrictive dispositional alternative, such as terminating only her custodial rights. Petitioner asserts that the termination of her custodial rights only would not have seriously threatened the child's welfare because the child's father retained his parental rights, which prevented adoption as a permanency plan for the child. Petitioner argues that, because the permanency plan for the child was guardianship, the circuit court should have terminated only petitioner's custodial rights. Further, petitioner highlights that termination of custodial rights only was the guardian's recommendation. However, we find petitioner completely fails to address the circuit court's findings that support termination of her parental rights; thus, we conclude that she is entitled to no relief on appeal in this regard.

Petitioner's failure to complete the terms of her improvement period supports the circuit court's termination of her parental, custodial, and guardianship rights. Pursuant to West Virginia Code § 49-4-604(c)(6), a circuit court may terminate an abusing parent's parental, custodial, and guardianship rights upon findings that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. The circuit court may find that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" when

> [t]he abusing parent or parents have not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare, or life of the child.

W. Va. Code § 49-4-604(d)(3). Here, petitioner did not respond to the rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies. As discussed above, petitioner failed to fully participate in her parenting classes or mental health treatment. Further, the evidence presented at the dispositional hearing showed that, despite D.P.'s controlling behaviors during the proceedings, petitioner prioritized her relationship with him to the detriment of the child. Additionally, petitioner testified that she would not always follow her medication recommendations, especially during "low" periods of her bipolar disorder and when experiencing stress in her life. Thus, the conditions which existed at the time of the petition's filing continued unabated. Therefore, we find no error in the circuit court's finding that there was no reasonable

---

the family case plan were formulated and that she was fully aware of the terms of her improvement period. Petitioner does not argue that the lack of a formal recitation of the terms of her case plan prejudiced her. Although we agree that the DHHR's failure to file a family case plan is problematic, we find that petitioner was fully aware of her requirements under the agreed upon case plan and, therefore, the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes were not so substantially disregarded or frustrated as to warrant vacation of the resulting dispositional order. *See* Syl. Pt. 5, *In re Edward B.*, 210 W. Va. 621, 558 S.E.2d 620 (2001) (holding that "the resulting order of disposition will be vacated and the case remanded" when "it appears from the record that . . . the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes . . . [have] been substantially disregarded or frustrated").

5

likelihood that the conditions of neglect or abuse could be substantially corrected in the near future and that termination of petitioner's parental rights was necessary for the welfare of the child.

A circuit court may terminate a parent's parental, custodial, and guardianship rights based on these findings. We have previously held that

> "[t]ermination of parental[, custodial, and guardianship] rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Therefore, the termination of petitioner's parental rights was warranted based on the circuit court's findings, which petitioner does not challenge on appeal. Moreover, we find petitioner's argument regarding the father's parental rights to be unpersuasive. We have previously held that West Virginia Code § 49-4-604 "permits the termination of one parent's parental rights while leaving the rights of the nonabusing parent completely intact, if the circumstances so warrant." *In re Emily*, 208 W. Va. 325, 344, 540 S.E.2d 542, 561 (2000). Further, "simply because one parent has been found to be a fit and proper caretaker for [the] child does not automatically entitle the child's other parent to retain his/her parental rights if his/her conduct has endangered the child and such conditions of abuse and/or neglect are not expected to improve." *Id*. Accordingly, we find no error in the circuit court's order terminating petitioner's parental rights rather than imposing a less-restrictive dispositional alternative.

For the foregoing reasons, we find no error in the decision of the circuit court, and its January 16, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: September 23, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison